STATE OF VERMONT

ENVIRONMENTAL COURT

}

Appeal of Bowman　　　　　　　　　　　　　}　　　Docket No. 70-5-96

Vtec

}　　　(formerly E96-070)

}

<u>Decision and Order on Pending Motions</u>

Appellant William M. Bowman, III, moves for relief from the March 5, 1997 decision

of the Environmental Court regarding the width of an easement[1] benefitting the property

of Appellee-Applicants James and Renee Ackerman, and moves for summary judgment.

Appellees move for Rule 11 sanctions.　Appellant represents himself; Appellees Ackerman,

as well as Appellee-Interested Parties Gary and Lindsay Ryan, Richard Schattman and

Ruth Dennis, and Lawrence and Barbara Young, are now represented by Charles F.

Storrow, Esq.; Interested Person James E. Nixon represents himself; and the Town of

Fairfax is now represented by Joseph S. McLean, Esq.

---

[1]　In this document we will use the term "easement" whenever possible, as the term

"right-of-way" is  sometimes confused in colloquial use to refer to a traveled way, that is, an actual

roadway or driveway, rather than the easement over which it runs.

<u>Renewed Motion for Relief from 1997 Environmental Court Judgment</u>

We review the sequence of the conveyance of the parcels at issue in this litigation and the sequence of the several cases brought before the Environmental Court and Franklin Superior Court relating to this property, to the extent necessary to rule on the pending motions.

All of the property at issue in the two rounds of Franklin Superior Court litigation was derived from a common owner: John and Juanita Shedd. In 1960 the Shedds conveyed a triangle of land by warranty deed to Clifford and Alma Parah. As described in the deed, the property measured 113 feet along its southerly boundary at Route 104A, 210 feet along the easterly side of the triangle to its apex, and 250 feet along the westerly side of the triangle. The Shedd-to-Parah deed reserved to the Shedds, in common with the Parahs, the right to use "the road leading from 104A to the Sugar Bush so-called, over" the Parah lot.

Nothing in that deed stated how much of the road traversed the Parah lot and how much ran over neighboring Shedd land, and no survey from that transaction has been presented in evidence in either court. If the ten-to-fourteen-foot-wide 'gravel drive' shown on the 1988 Peter Cross survey for Matthew Van Brocklin was in the same location as the 1960 'road' referred to in the Shedd-to-Parah deed, only the most southwesterly corner of the road ran over only the most southeasterly corner of the triangular Parah lot, and the

remainder of the road ran on the then-Shedd property to the east of the Parah lot, later deeded to Simoneau and Wiggin.  This Court has no jurisdiction to establish the Shedds intent in 1960, or at any time, as this Court cannot resolve property or contract disputes.

In 1975, Matthew Van Brocklin[2] acquired what had been the Parah lot.  Between 1978 and 1987 the Shedds conveyed additional parcels with access from Route 104A over the same easement.

---

[2]  A predecessor-in-interest to Appellant Bowman.

On July 27, 1984, the Shedds conveyed by warranty deed to Allen Simoneau and Sal Wiggin a 5.78-acre parcel of land with frontage on Route 104A, directly easterly of the Van Brocklin (former Parah) lot. In that deed, the Shedds stated that the Simoneau/Wiggin parcel was "subject to a certain right-of-way to be used in common by the Grantors, their heirs and assigns, and others," and described the 'right-of-way' as being "located along the westerly line" of the Simoneau/Wiggin lot[3].

In 1985, the Youngs, owners of one of the back lots with access by this easement, sought ZBA approval of improvements on their property. The ZBA approval was first denied and later granted, subject to proof that the easement serving their property was at least 25 feet in width. At the request of Lawrence Young, on June 24, 1985, the Shedds and Allen Simoneau and Sal Wiggin (but not Van Brocklin) entered into an agreement stating it was their understanding that the right-of-way referred to in the Shedd-to-Simoneau/Wiggin deed "has been, is, and shall be twenty-five (25) feet in width over its

---

[3] Appellant has claimed that the Shedds had no authority to grant this right-of-way to Simoneau/Wiggin, arguing they had already granted it to Parah and had only reserved the right to use it to themselves and their heirs. According to the 1988 survey map, however, prior to the 1984 conveyance (and the 1988 settlement) a portion of the traveled way passed over what was then the Shedd property, separate from the portion that passed over the corner of the triangular deeded Parah parcel, which was the only parcel subject to that limiting language. In any event, this issue was settled in the 1988 settlement of the Van Brocklin v. Shedd litigation, Docket No. S301-86 Fc in Franklin Superior Court, and this Court has no jurisdiction to inquire further.

entire length." It is this agreement that Appellant argues was "fraudulent."

Because Van Brocklin was not a party to that agreement, we note that the signatories to that agreement only had authority to agree about the width of the easement as it extended over what was then the Simoneau/Wiggin property (and onto the Shedd property), as those were the owners of the land underlying the easement. Their agreement could not and did not purport to extend the easement onto what was then the triangular deeded parcel of Van Brocklin land. However, only the Franklin Superior Court then had or now has jurisdiction to locate that easement on the ground. In any event, nothing about their agreement as to the width of the easement demonstrates that it was obtained through fraud.

Less than a month later, on July 15, 1985, Van Brocklin, the Youngs and the Shedds, (but not Simoneau and Wiggin), entered into a separate agreement providing that the center line of the right-of-way was the center line of the then-existing traveled way (gravel drive). If, as alleged in the Superior Court proceedings, Van Brocklin was unaware of the earlier 25-foot-width agreement between his neighbors when he agreed to the location of the centerline, any grounds for an argument that this centerline-location agreement was fraudulently procured should have been made to the Superior Court, the only court with jurisdiction over any such argument. The fact that no such argument appears to have been made in either the 1986 or the 1999 Superior Court cases cannot

be remedied in this Court.

By this time in 1985, it appears that the then-owners of the properties, that is, at least Van Brocklin, Simoneau and Wiggin, and the Shedds (their common grantors), disagreed as to whether the traveled way was located on Van Brocklin property or on Simoneau/Wiggin property, and possibly also disagreed as to whether the underlying easement was located on Van Brocklin property or on Simoneau/Wiggin property, or in part on both properties.

In 1986, Van Brocklin brought an action in Franklin Superior Court to resolve those questions. Van Brocklin v. Shedd, Franklin Superior Court Docket No. S301-86 Fc. We do not have before us the file in that 1986 action that might reveal whether the parties addressed the distinction between the width and location of the traveled way as opposed to or as compared with the width and location of the underlying easement. If the two 1985 agreements were on their face mutually incompatible as they affected the first hundred feet of the gravel drive, from Route 104A to the rear of the house, that argument should have been made to the Superior Court, the only court with jurisdiction over it. In their 1986 litigation, the then-parties could have resolved whether the agreement about the width of the easement (which would have had to have extended the easement onto Simoneau/Wiggin property to avoid affecting the deeded Van Brocklin triangle, as Van Brocklin was not a signatory to it) was incompatible with the agreement as to the location

of the centerline of the easement (which Simoneau and Wiggin had not signed.)

In any event, that litigation, <u>Van Brocklin v. Shedd</u>, Docket No. S301-86 Fc, was settled in 1988 by an agreement among Van Brocklin, the Shedds, Simoneau and Wiggin. The survey that resulted from that settlement established the location of the traveled way (gravel drive) within the Van Brocklin parcel, established the new property line, and obligated the users of that access not to expand it any farther to the west than its then-present location.  In that settlement, the Shedds and Simoneau and Wiggin quitclaimed to Van Brocklin all right and title they had to any property westerly of the newly surveyed easterly property line of the Van Brocklin parcel, which was established just to the east of the traveled way (and included additional land so that the water supply for the Van Brocklin parcel formerly on Shedd land would be located on Van Brocklin land).  That settlement was, however, silent as to the location of the traveled way (the gravel drive shown on the 1988 survey) within the easement, and does not appear to have vacated or withdrawn or superseded either of the 1985 agreements.  Any need on the part of those litigating parties or their successors to reopen that settlement to clarify the location of the traveled way within the easement, or the location of the easement on the ground, should have been addressed or should be addressed to the Franklin Superior Court.  This Court has no jurisdiction to affect a Superior Court settlement or judgment, whether issued eighteen years ago or more recently.

In 1992, Van Brocklin deeded the parcel to another owner, who quitclaimed it in 1996 to Appellant Bowman.

In 1996, Appellant filed the present appeal of a grant of zoning approval to Appellee-Applicants Ackerman, claiming that their access to Route 104A was not at least 25 feet in width. After an evidentiary hearing at which only the Town was represented by counsel, the Environmental Court issued a decision that the Ackerman property had access by a right-of-way or easement at least 25 feet in width (although finding the traveled way to be narrower), based on the June 24, 1985 agreement, and concluding that Appellee-Applicants Ackerman were entitled to their permit. The Vermont Supreme Court upheld that decision in a three-justice-panel decision in March of 1998. The Environmental Court had no jurisdiction then, and still has no jurisdiction, to reform either of the 1985 agreements or to reopen or otherwise alter the 1988 settlement of Van Brocklin v. Shedd. The Environmental Court did not and could not locate that easement on the ground, or rule on the location of the gravel drive within the easement, or on whether some portion of the easterly side of the easement was located on Simoneau/Wiggin property. All that it had before it to decide, and that it did decide on March 7, 1997, was that Appellee-Applicants Ackerman had met their burden of proof under the Zoning Regulations to show that they had access to their property by a 25-foot-wide easement. Nothing about the subsequent litigation in Superior Court or the Supreme Court has changed that fact.

In 1999, Appellant filed an action to quiet title and for declaratory judgment in Franklin Superior Court to establish the property rights that were outside the Environmental Court's jurisdiction, and to prevent the Ackermans from extending the traveled way farther to the west, that is, closer to Appellant Bowman's house. Bowman v. Ackerman, et al., Docket No. S217-99 Fc. In that litigation, the Franklin Superior Court accepted the 25-foot-width of the underlying easement as found by the Environmental Court from the 1985 agreement. The Vermont Supreme Court affirmed the Franklin Superior Court's reliance on the Environmental Court's finding regarding the width of the right-of-way, see Bowman v. Ackerman, et al., Docket No. 2003-133 (October 2, 2003) (mem.), as well as the Franklin Superior Court's dismissal of Simoneau and Wiggin from that litigation.

However, accepting that width for the easement did not locate the easement on the ground in relation to the traveled way. It was up to the Superior Court and not the Environmental Court to determine the effect of the 1988 settlement on the earlier 1985 agreements, and whether to take evidence on or reopen the 1988 settlement to establish the location of the ten-to-fourteen-foot-wide traveled way (gravel drive) within the twenty-five-foot-wide easement. The fact that it did not do so and that the Supreme Court upheld its decision is not within the jurisdiction of this Court to address.

Accordingly, based on the foregoing, Appellant's Motion for Relief from Judgment, seeking to reopen this Environmental Court appeal, is DENIED. The above-captioned case remains concluded and we therefore do not reach Appellant's motion for summary judgment.

Rule 11 Sanctions and Timeliness

Although Appellant has brought these issues to Superior Court as well as to this Court, and the Supreme Court has upheld both lower courts, his filing of the motion for renewed relief from this Court's March 1997 decision is not frivolous or presented for an improper purpose so as to warrant V.R.C.P. 11 sanctions, it merely reflects an unrepresented party's lack of understanding of the scope of Environmental Court jurisdiction. Appellant was entitled to use every effort to try to bring his issues regarding the width, location and use of the easement before a court with jurisdiction to decide them. Although the Environmental Court does have jurisdiction to determine whether a permit applicant has met all the requirements of the zoning ordinance, including whether the permit applicants have met their burden of proof that they have access to their property over an easement of a certain minimum width, it does not have jurisdiction to determine the underlying property rights of the affected parties. However, at the time of this Court's 1997 decision and order, this Court had not yet had occasion to make that distinction clear

in a court ruling.  See, e.g., Appeal of Cole, 174-10-01 Vtec (Vt. Envtl. Ct., May 12, 2003).

Appellant's motion for relief from judgment was originally made shortly after the Superior Court decision relying on the Environmental Court's decision, and therefore was timely when made. This Court postponed it until after the appeal to the Supreme Court of the related Superior Court action would have been concluded, as the issues in that appeal could have affected Appellant's perceived need for reconsideration in the present appeal. Appellant's renewed motion was timely after the Supreme Court's ruling on the Superior Court appeal.

Accordingly, Appellees' Motion for Rule 11 Sanctions is DENIED.

Because the 1988 settlement prohibited the expansion of the gravel drive westerly of its extent as of the 1988 survey, it may be to the advantage of the parties to use the assistance of a mediator to see if they can come up with a resolution to govern the relationship of these properties and the use of the traveled way into the future, and to avoid future litigation in Environmental or Superior Court.

We also note that we have scheduled a conference for July 5, 2005, with Mr. Bowman and the Town's attorney to discuss Docket No. 163-10-01 Vtec; notice enclosed for the participating parties in that separate appeal.

Done at Berlin, Vermont, this 21st day of June, 2005.

_____

Merideth  Wright

Environmental  Judge